UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| IN RE X-TREME BULLETS, INC.,<br><br>                 Debtor.<br>_____<br>J. MICHAEL ISSA, *as Trustee of the HMT Liquidating Trust*,<br><br>                 Appellant,<br>    v.<br>CAPITAL CARTRIDGE, LLC,<br><br>                 Appellee. | Case No. 3:21-cv-00060-MMD<br><br>Bankruptcy Case No. 18-50609<br><br>Adversary No. 20-05018-BTB<br><br>ORDER |

**I.   SUMMARY**

Before the Court is Appellee Capital Cartridge, LLC's motion to dismiss (ECF No. 11 ("Motion")) this appeal of two bankruptcy court orders.[1] Capital Cartridge argues that Appellant, HMT Liquidating Trust Trustee J. Michael Issa, lacks standing to bring this appeal and, alternatively, has waived his right to appeal the orders of the bankruptcy court in the underlying adversary proceeding. Because the Court finds that Issa has standing to bring this appeal, the Court will deny the Motion.

**II.   BACKGROUND**

This appeal arises from an adversary proceeding ("Adversary") related to a Chapter 11 bankruptcy case.[2] On June 8, 2018, eight companies in the business of manufacturing, assembling, and selling small arms ammunition (collectively, "Debtors")

---

[1]Appellant responded (ECF No. 22) and Appellee replied (ECF No. 24).

[2]This appeal arises from the same bankruptcy proceeding as another appeal pending before the Court, *Issa v. Royal Metal Industries, Inc.*, 3:21-cv-00062-MMD. The orders giving rise to both appeals were argued together before the Bankruptcy Court, and both appeals present the same legal questions.

filed Chapter 11 bankruptcy petitions.[3] Although the Debtors are separate companies, one individual—David C. Howell—was the principal of each Debtor.[4] (ECF No. 11-2 at 5.) While the bankruptcy proceedings were not consolidated, the Debtors coordinated extensively throughout their respective cases. Aspects of that coordination gave rise to the issues underlying this appeal, as explained below.

### A. Issa as Chief Restructuring Officer and the Unsecured Creditors' Committee

Approximately three weeks after the Debtors' petitions were filed, the Debtors filed a motion to engage J. Michael Issa as their Chief Restructuring Officer ("CRO") (ECF No. 11-2 [Bk. DE 69]),[5] which the Bankruptcy Court later approved. (ECF No. 11-4 [Bk. DE 127].) As CRO, Issa would be "responsible for overseeing the operations of the Debtors and for supervising the administration of the Debtors' Chapter 11 cases." (ECF No. 11-2 at 2.) The debtors' motion to engage Issa further clarified that Issa would:

> supervise the operations of the Debtors' businesses and all aspects of the Debtors' financial affairs, assist the Debtors to fulfill their reporting obligations under the Bankruptcy Code and to the Office of the United States Trustee[]; ***identify, and pursue recovery from the disposition of, assets of the Debtors' estates***; address and resolve disputed claims asserted against the Debtors; and provide business plan analysis and assistance to the Debtors' counsel with respect to the formulation and preparation of a plan of reorganization and accompanying disclosure statement.

(*Id.* at 6 (emphasis added).) Issa's engagement was intended to "help to ensure that the cases are administered in a fair and competent manner, for the benefit of Debtors' creditors." (*Id.*) In addition to Issa's enumerated responsibilities, the motion to engage Issa included an umbrella consideration that he may perform "such other services as may

---

[3]The Debtors are X-Treme Bullets, Inc.; Howell Munitions & Technology, Inc.; Ammo Load Worldwide, Inc.; Clearwater Bullet, Inc.; Howell Machine, Inc.; Freedom Munitions, LLC; Lewis-Clark Ammunition Components, LLC; Components Exchange, LLC.

[4]Howell owned 95% of the issued and outstanding stock of Debtor Howell Munitions & Technology, Inc., which in turn was the sole shareholder of four of the Debtors and the complete or majority membership interest owner of the other three Debtors. (ECF No. 11-2 at 5.)

[5]Debtors supplemented their motion to engage Issa. (ECF No. 11-2, Bk. DE XX.)

be mutually agreed upon by the Debtors and [his firm] in furtherance of a resolution of these cases." (*Id.* at 9.)

On July 23, 2018, the U.S. Trustee filed a notice in the Bankruptcy Court appointing an official Committee of Unsecured Creditors (the "Committee"), pursuant to 11 U.S.C. § 1102(a). (ECF No. 11-5 [Bk. DE 107].) The Committee and the Debtors worked collaboratively on many issues during the pendency of the bankruptcy litigation, including closing a contested sale of the Debtors' operating assets. (ECF No. 22 at 4.)

Two years later, Issa entered into a stipulated agreement (the "Stipulation") with the Committee which purported to grant the Committee derivative standing to commence, prosecute, and resolve certain claims and causes of action on behalf of the Debtors. (ECF No. 11-6 [Bk. DE 921].) The Stipulation granted the Committee the authority to pursue claims relating to certain pre-petition transactions between certain Debtors and third parties. (*Id.* at 2-3.) One such third-party was Capital Cartridge. (*Id.* at 3.) The Bankruptcy Court approved the Stipulation the following day and entered an order granting the Committee derivative standing according to the Stipulation's terms (the "Stipulation Order"). (ECF No. 11-7 [Bk. DE 923].)

**B.     The Adversary**

On June 5, 2020, two days after the Stipulation Order was entered, the Committee commenced the Adversary against Capital Cartridge. (ECF No. 11-11 [Adv. DE 1].) The Adversary sought to avoid transfers and recover previously transferred property pursuant to 11 U.S.C. §§ 544, 548, and 550, and further sought to disallow claims pursuant to 11 U.S.C. § 502(d). (*Id.* at 2.) The Committee sought avoidance and turnover of more than $300,000 in fraudulent transfers from Debtor Howell Munitions & Technology to Capital Cartridge. (ECF No. 22 at 5.)

Capital Cartridge filed a motion to dismiss the Adversary complaint on September 2, 2020, based in large part on the Committee's standing to bring the claims in the Adversary. (ECF No. 11-12 [Adv. DE 6].) In its motion to dismiss, Capital Cartridge argued: (1) the Committee lacked Article III standing to bring the Adversary; (2) the

Committee lacked otherwise Congressionally granted statutory authority to maintain an action on the claims alleged against Capital Cartridge; and (3) neither the Bankruptcy Court, nor Issa, nor the Debtors were able to authorize the Committee to pursue the claims in the Adversary complaint without express Congressional authorization. (ECF No. 11 at 6.) The Committee responded that the injury suffered by the Debtors, as alleged in the Adversary, had been assigned to the Committee via the Stipulation Order. (ECF No. 11-13 [Adv. DE 12].) In its reply, Capital Cartridge objected that no causes of action had been assigned to the Committee. (ECF No. 11-14 [Adv. DE 13].)

The Bankruptcy Court held a hearing on October 13, 2020, on Capital Cartridge's motion to dismiss the Adversary complaint. (ECF No. 11-23 [Adv. DE 54].) At the hearing, the Committee invited counsel for the Debtors to make an appearance and argue. (*Id.* at 40.) Capital Cartridge objected that such an appearance would be improper because the Debtors were not a party to the Adversary, had not filed any brief in the Adversary, and had otherwise not taken any action in the Adversary. (*Id.* at 41.) The Bankruptcy Court sustained the objection, and counsel for the Debtors was not permitted to argue. (*Id.*)

Capital Cartridge further argued at the hearing that its motion to dismiss implicated the Stipulation Order, and asked that its arguments also be considered a motion for reconsideration of the Stipulation Order. (*Id.* at 6-7.) The Bankruptcy Court agreed. At the conclusion of argument, the Bankruptcy Court granted Capital Cartridge's motion to dismiss and ordered the parties to prepare an order in compliance with that holding. (*Id.* at 41.)

Ten days later, the Bankruptcy Court entered an order granting Capital Cartridge's motion to dismiss the Adversary (the "Dismissal Order"). (ECF No. 11-15 [Adv. DE 14].) The Dismissal Order also granted relief from the Stipulation Order. Neither the hearing transcript nor the Dismissal Order explained the reasoning for the Bankruptcy Court's changed ruling.

On October 27, 2020, the Committee filed a motion for reconsideration of the Dismissal Order. (ECF No. 11-16 [Adv. DE 17].) The Debtors, who were not a named

party in the Adversary, filed a motion to join in the Committee's motion for reconsideration. (ECF No. 11-18 [Adv. DE 25].) The Bankruptcy Court held a hearing on the motion for reconsideration on January 7, 2021. (ECF No. 11-22 [Adv. DE 45].) At the hearing, Capital Cartridge orally moved to strike the joinder motion on the grounds that the Debtors were not a party in the Adversary. (*Id.* at 12-25.) The Bankruptcy Court orally denied the motion for reconsideration and entered a written order on January 22, 2021 ("Reconsideration Order").[6] (ECF No. 11-21 [Adv. DE 30].) Issa filed a notice of appeal of the Dismissal Order and the Reconsideration Order.[7]

### C.     The Plan and This Appeal

The Debtors filed their First Amended Joint Plan (the "Plan") on July 17, 2020. (ECF No. 11-8 [Bk. DE 973].) Per the Plan's terms, all of the Debtors' assets, including any avoidance causes of action, would be transferred to and vested in a liquidating trust (the "Trust") upon the Plan's effective date. (*Id.* at 36-38.) The Trust would be administered by J. Michael Issa, as Trustee, who would become responsible for prosecuting or settling avoidance causes of action for each Debtor, and otherwise oversee the Trust for the benefit of each Debtor's creditors. (*Id.*) Moreover, upon the Plan's effective date, Issa would become the legal representative of each Debtor's estate. (*Id.* at 40.) Specifically, the Plan states:

> as the representative of each Debtor's Estate, the Liquidating Trust Trustee shall succeed to all of the rights and powers of each Debtor and its Estate with respect to all Causes of Action of the Debtor, and shall be substituted for, and shall replace, the Debtor as the party-in-interest in all such litigation pending as of the Effective Date.

(*Id.*) The Plan further states that all right to and interest in any cause of action would automatically transfer to Issa upon the Plan's effective date. (*Id.* at 42.) The Bankruptcy Court entered an order confirming the Plan on October 1, 2020 ("Confirmation Order").

---

[6] The Bankruptcy Court did not make any express ruling on the joinder issues, instead simply denying the motion for reconsideration.

[7] Issa's initial notice of appeal was filed January 22, 2021 (ECF No. 11-20, Adv. DE 28), and appealed only the Dismissal Order. Issa filed an amended notice of appeal on February 4, 2021 (ECF No. 11-24, Adv. DE 50), which appealed both the Dismissal and Reconsideration Orders.

5

(ECF No. 11-9 [Bk. DE 1058].) The Plan became effective on October 26, 2020. (ECF No. 11-10 [Bk. DE 1066].)

Issa now appeals—through the Committee—the Dismissal Order and Reconsideration Order as trustee of the Liquidating Trust and successor-in-interest to the Committee.[8] (ECF No. 1 at 2.) Capital Cartridge moves to dismiss the appeal, arguing alternatively that Issa either lacks standing because he is not the successor-in-interest to the Committee, or that Issa waived and forfeited the right to appeal the Dismissal and Reconsideration Orders because he did not appear in the underlying Adversary. (ECF No. 11 at 9-12.)

### III.  LEGAL STANDARD

The Ninth Circuit requires that both Article III and prudential standing be satisfied for a particular appellant to appeal a bankruptcy order. *See In re Sisk*, 962 F.3d 1133, 1143 (9th Cir. 2020). Article III standing demands that a party demonstrate "(1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Id.* at 1141 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

The prudential standing test in bankruptcy, otherwise known as the "person-aggrieved" doctrine, considers whether the bankruptcy court's order "diminish[es] the [appellant's] property, increase[s] his burdens, or detrimentally affect[s] his rights." *Id.* (quoting *In re Fondiller*, 707 F.2d 441, 442 (9th Cir. 1983)). The "person-aggrieved" doctrine typically only applies when the appellant is not the party who brought the motion at issue in the bankruptcy court "because the purpose of the doctrine—limiting the appeals of remote non-parties—is not implicated when the appellant is the party below and remains integrally connected to the issues on appeal." *Id.* (citing *In re Sherman*, 791 F.3d 948, 957 n.8 (9th Cir. 2007)).

---

[8] Issa states that the Committee may maintain the litigation pursuant to Federal Rule of Civil Procedure 25(c), which provides: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."

"[A]ttendance and objection are not prudential standing requirements in bankruptcy cases." *In re Wrightwood Guest Ranch, LLC*, 896 F.3d 1109 (9th Cir. 2018) (citing *In re Point Ctr. Fin., Inc.*, 890 F.3d 1188, 1193 (9th Cir. 2018)). Instead, these considerations "relate to whether a party has waived or forfeited its right to appeal." *Id.* Whether a party waived its right to appeal is not a jurisdictional question of standing, but rather a procedural rule which may be dispensed with at the discretion of the appellate court. *See In re Point Ctr Fin., Inc.*, 890 F.3d at 1193.

## IV.   DISCUSSION

It is undisputed that upon confirmation of the Plan, Issa (acting as Trustee) became the proper party to all the Debtors' claims. Issa argues that the Adversary claims belonged at all times to the Debtors, including while the Committee pursued them on the Debtors' behalf. Accordingly, Issa argues, he assumes the role as the proper party to pursue this appeal because the Debtors' claims were consolidated in the Liquidating Trust and it is the Trustee's responsibility to prosecute those claims. Capital Cartridge argues alternatively that the Stipulation could not have conferred derivative standing on the Committee or that the Debtors' assigned their claims to the Committee, and therefore the Adversary was pursued by the Committee in its own name. Because the Issa does not have any right to pursue the Committee's claims, Capital Cartridge argues, he is not the proper party to bring this appeal. Whether Issa has standing in this appeal therefore turns on whether the Stipulation assigned the claims to the Committee or authorized the Committee to act on behalf of the Debtors' estates for those estates' benefit.

Because the Court finds that there was no assignment of claims and that the Stipulation authorized the Committee to bring the Debtors' claims on the Debtors' behalf and for the benefit of the Debtors' estates, the claims rightfully belonged to the Debtors. Accordingly, when the Plan was confirmed, the Debtors' causes of actions were consolidated in the Liquidating Trust and Issa became proper party to assert this appeal as the Trustee per the terms of the Plan. For these reasons and as explained further

below, the Court finds that Issa has standing to bring this appeal and will therefore deny Capital Cartridge's Motion.

### A. Assignment and Derivative Standing

As a preliminary matter, the Court addresses whether an assignment occurred. If the Debtors' assigned the rights and benefits to the Committee, then the claims in the Adversary would not have been consolidated at the time the Plan was confirmed. Because the Court finds that no assignment occurred, the Court will then consider whether the Committee was acting on behalf of the Debtors when it initiated the Adversary, or whether it pursued the Adversary in its own name.

Capital Cartridge maintains that the Committee commenced the Adversary "in its own name and on its own behalf." (ECF Nos. 11 at 10, 24 at 2.) This assertion—that the Debtors had fully assigned its alleged injuries from and causes of action against Capital Cartridge to the Committee—derives from a position taken in the Committee's response brief to the motion to dismiss the Adversary:

> the Debtor and its estate has suffered an injury, which has been assigned to the Committee. [Capital Cartridge] admits that an injury occurred to the Debtor. [Capital Cartridge] admits that the Debtor assigned the action to the Committee. Therefore, the Committee has, in addition to being harm, obtained direct injury through assignment by the Debtor.[9]

(ECF No. 11-13 at 7.) As explained further below, this articulation of the relationship between the Committee and the Debtors is inaccurate, and has caused not a little confusion, which the Court now endeavors to untangle.

Apart from this paragraph, neither party asserted at any other time that any claims were "assigned" to the Committee. In fact, both parties argued the opposite. During the Bankruptcy Court's hearing on the motion to dismiss the Adversary, when Capital Cartridge argued the Committee lacked standing to bring the suit on behalf of the Debtors, Capital Cartridge argued that "[t]he debtor also has not assigned these causes of action to the Committee, nor does the debtor have the ability to assign these causes of action

---

[9]As correctly noted at the hearing on the motion to dismiss the Adversary, Capital Cartridge did not admit that it injured the Debtor in question, nor did it admit that any injury was assigned to the Committee.

8

to the Committee" and "we argue that no assignment has occurred." (ECF No. 11-23 at 16.) Indeed, Capital Cartridge's stance at the hearing was that the order engaging Issa "did not include assigning away causes of action that are owned exclusively by the bankruptcy case estate." (*Id.* at 39.) Similarly, the Committee maintained the Debtors had granted the Committee derivative standing to pursue claims belonging to the estate, not that they had assigned the claims to the Committee. (ECF No. 11-23 at 18-30, 40.) After the Adversary was dismissed, the Committee made its stance clear at the hearing on its motion for reconsideration: "We've never argued that the actual causes of action were assigned to the creditors' committee. We've argued that derivative standing was conferred upon the creditors' committee."[10] (ECF No. 11-22 at 14.)

Yet in this appeal, Capital Cartridge appears to reverse its own position. At the Bankruptcy Court hearing on the Committee's motion for reconsideration, Capital Cartridge argued the Adversary must be dismissed because "[t]he Committee did not step into the shoes of the debtor[ and t]here was no assignment of those claims." (ECF No. 11-22 at 33.) Indeed, Capital Cartridge even argued that assignment would have been impossible because fraud claims may not be assigned. (*Id.* at 33.) Now, however, Capital Cartridge argues that Issa does not succeed to the claims in the Adversary because the Committee "had received a full assignment of the injury(s) [sic] and causes of action from the Debtors . . . Hence, the Committee filed the adversary case in its own name and on its own behalf." (ECF No. 11 at 10.)

The Stipulation did not assign the claims to the Committee. "Generally, questions as to the validity, enforceability, or effect of an assignment are governed by the law of the place where the assignment was made." 6 Am. Jur. 2d *Assignments* § 9 (Nov. 2021); *see also In re Silver States Helicopters, LLC*, 403 B.R. 849, 864 (Bankr. D. Nev. 2009) ("The assignability of rights generally depends on local law."). Under Nevada law, "[w]here a Chapter 11 bankruptcy plan of reorganization grants a creditor the right to pursue a claim

---

[10]Capital Cartridge rejected this interpretation of the Stipulation, noting that "the Committee has taken the position that an assignment occurred, and so they can't now take a position that there wasn't an assignment." (ECF No. 11-22 at 16.)

belonging to the debtor's estate pursuant to 11 U.S.C. § 1123(b)(3)(B) as a representative of the estate, and where the representative 'has no independent claim to any proceeds from a successful prosecution, there has been no assignment' of the claim." *Tower Homes v. Heaton*, 377 P.3d 118, 122 (Nev. 2016). Consequently, although some provision of state or federal law may prohibit certain claims from being assigned to other parties, those parties may sue as representatives of the estate "because the representative 'does not own the claim and is entitled only to reimbursement for incurred expenses and a reasonable hourly fee for its services.'" *Id.* However, if the party purporting to represent the estate transfers the "control and proceeds of the claim" to the representative, the representative cannot be said to bring a suit on behalf of the estate. *Id.*

Per the terms of the Stipulation, the Debtors consented only to granting the Committee derivative standing "to investigate, commence, prosecute and resolve" certain causes of action. (ECF No. 11-6 at 3.) Standing was limited to asserting certain claims against certain targets "on behalf of the Debtors' estates." (*Id.*) The Debtors reserved their rights "with respect to any motion filed seeking to approve any settlement of the Derivative Causes of Action." (*Id.* at 4.) The Adversary complaint reflects this arrangement. Explaining its role in its own words, the Committee claimed it "was authorized and given derivative standing to assert, on behalf of the Debtors' estates, certain causes of action, including the causes of action set forth in this Complaint." (ECF No. 11-11 at 3.) The relief requested likewise shows that the Committee was operating as a representative of the estate. As its remedy for recovery of unlawfully transferred funds, the Committee sought judgment "directing [Capital Cartridge] to return to the Debtors' estates the amount of the Fraudulent Transfers." (*Id.* at 16.) The "proceeds" of the claims would benefit the Debtors and their estates and would not be retained by the Committee itself. *See Tower Homes*, 377 P.3d at 122. It is clear that throughout the Adversary, the Committee was pursuing the Debtors' claims for the benefit of the estate, effectively as a representative party. No assignment therefore occurred.

The features of the Adversary complaint and terms of the Stipulation likewise indicate that the Committee was not, in fact pursuing the Adversary in its own name. Through the complaint and repeatedly during the hearings on the motion to dismiss the adversary and motion for reconsideration, the Committee reiterates that it is acting on behalf of the Debtors. At no point have the Debtors argued the Committee was not acting on its behalf, and the Debtors even sought to join the motion for reconsideration of the Dismissal Order. The Court is simply not persuaded that the Committee was attempting to assert fraudulent transfer claims against Capital Cartridge in its own name.

Because the Debtors did not "assign" their claims to the Committee, the Debtors retained ownership of the claims even during the pendency of the Adversary. When the Plan was confirmed on October 26, 2020, those claims vested in the Liquidating Trust and Issa became the sole person authorized to prosecute and pursue claims belonging to the Trust. (ECF No. 11-8 at 42.) Despite the confusing statements made in the Committee's response brief, the Committee clearly was pursuing the Adversary claims on behalf of the Debtors' estate. Issa is therefore the proper party to bring this appeal.

### B.     Waiver and Forfeiture

Capital Cartridge's arguments that Issa has somehow waived or forfeited his right to appeal are inapposite. Issa was not a named party to the Adversary because he was not the Trustee during the pendency of the Adversary, as there was no Liquidating Trust until the Plan became effective. Moreover, the waiver and forfeiture doctrine that Capital Cartridge relies upon is inapplicable to Issa as he has direct standing to pursue claims on behalf of the Debtors' estates and need not rely on a theory of "person aggrieved" prudential standing. *See In re Sisk*, 962 F.3d at 1141. Even if the Court were to consider Issa a new participant or a "remote" party who must satisfy the "person aggrieved" test, the Court still would not find that the Debtors (or their representative) had waived their appearance in the Adversary. The Debtors clearly demonstrated their interest and investment in the outcome of the Adversary by attempting to appear and argue at both hearings and attempting to join the motion for reconsideration. The fact that the

Bankruptcy Court denied their attempts to join does not convince this Court that the Debtors waived or forfeited their right to bring this appeal, even if their representative did not have direct standing as the successor to the party below.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Appellee's motion to dismiss (ECF No. 11) is denied.

It is further ordered that the stay of the briefing schedule is lifted. Appellee's response brief is due within 14 days. Appellant's reply brief is due 14 days after Appellee's response is filed.

DATED THIS 24th Day of January 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE